UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **ELVIS FRANKLIN ET AL** | **CASE NO. 2:23-CV-00375** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **USA** | **MAGISTRATE JUDGE LEBLANC** |

MEMORANDUM RULING

Before the court is a Motion for Partial Summary Judgment [doc. 25] filed by plaintiffs in this Federal Tort Claims Act suit. The government opposes the motion. Doc. 33.

I.
BACKGROUND

This suit arises from a motor vehicle accident that occurred on October 12, 2021, between a car driven by plaintiff Elvis Franklin and a postal vehicle driven by United States Postal Service employee Reginald Ewing. Doc. 1, ¶¶ 11–12. Plaintiff Elvis Garrick was riding as a passenger in Mr. Franklin's vehicle. *Id.* at ¶ 11. Plaintiffs allege as follows: Mr. Franklin was traveling southbound on Third Avenue in Lake Charles, Louisiana, while Mr. Ewing approached eastbound on Second Street. *Id.* at ¶ 12. Mr. Ewing stopped at a stop sign at the intersection Second Street and Third Avenue, then attempted to make a right turn southbound onto Third Avenue. *Id.* At this point he collided with Mr. Franklin's vehicle, causing injuries and damages. *Id.*

Plaintiffs filed suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, after timely presenting their claims to USPS. *Id.* at ¶¶ 1–5. The matter is set for bench trial before the undersigned on April 14, 2025. Plaintiffs now move for partial summary judgment on the issue of the government's liability. Doc. 25. The government opposes the motion. Doc. 32. Mr. Garrick has since settled his claims in this matter but Mr. Franklin maintains the action and the motion. *See* doc. 34.

## II.
### SUMMARY JUDGMENT STANDARD

Under Rule 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). He may meet his burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003). The non-moving party is then required to go beyond the pleadings and show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To this end he must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
### LAW & APPLICATION

The FTCA, 28 U.S.C. § 2675(a), is a limited waiver of the government's sovereign immunity for certain tort claims brought against employees of the United States under the doctrine of respondeat superior. It provides district courts with jurisdiction over claims based on the negligent or wrongful acts of government employees "where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 2675(b). Accordingly, the court applies the tort law of the state where the alleged injury occurred—in this case, Louisiana—to determine the government's liability. *Villafranca v. United States*, 587 F.3d 257, 260 (5th Cir. 2009).

Louisiana courts determine liability for negligence based on a duty-risk analysis. *Long v. State ex rel. Dept. of Transp. and Dev.*, 916 So.2d 87, 101 (La. 2005). Through this test the plaintiff must show all of the following:

> (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant's conduct failed to conform to the

appropriate standard (the breach element); (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) the actual damages (the damages element).

*Audler v. CBC Innovis, Inc.*, 519 F.3d 239, 249 (5th Cir. 2008) (citing *Lemann v. Essen Lane Daiquiris*, 923 So.2d 627, 633 (La. 2006)).

Mr. Franklin moves for summary judgment on the government's liability based on evidence that Mr. Ewing had a duty to yield and breached that duty at the time of the crash. The officer who investigated the crash scene also determined that Mr. Franklin had the right of way and that the accident was caused by Mr. Ewing's failure to yield. Doc. 25, att. 2. Mr. Franklin has provided a declaration stating that he was traveling under the posted speed limit at the time of the accident and had no way to avoid the collision because Mr. Ewing suddenly pulled into his path. Doc. 25, att. 1. He maintains that he was not on his cell phone or otherwise distracted at the time of the wreck.[1] *Id.*

Mr. Ewing testified that he had a stop sign at the Second Street and Third Avenue intersection but that there was no light or sign for southbound vehicles. Doc. 25, att. 3, pp. 14–15. Although he speculated that Mr. Franklin might have been turning out of a nearby parking lot or speeding, he acknowledged that he did not see Mr. Franklin's vehicle until it made impact. *Id.* at 13–14. The government disputes, however, that Mr. Franklin was

---

[1] The government notes that it requested that Mr. Franklin produce his cell phone records from October 2021 and that Mr. Franklin claims he does not have these in his possession. Doc. 33, pp. 3–4; *see* doc. 33, att. 2. These cell phone records may be the subject of supplemental discovery responses at issue in the magistrate judge's recent status conference. *See* doc. 36. Because the court already has a basis to deny summary judgment through Mr. Ewing's testimony, it will not reach the issue of Mr. Franklin's alleged distracted driving.

traveling on Third Avenue because Mr. Ewing testified that he looked for oncoming traffic and did not see another vehicle:

> **Q.** Okay. So you can't tell us where he had been prior to the impact?
> **A.** I know he didn't come from Broad Street because obviously I'm at the stop sign and I'm looking. There was nothing and then all of a sudden when I go into the turn, and I was like, where did you come from. My thought[] was he came from the parking lot of Market Basket [because] a lot of people do that to bypass the light. I'm not saying he did that. There was no way—he just appeared.
> . . . .
> **Q.** Do you have any evidence that Mr. Franklin came out of that Market Basket parking lot?
> **A.** I don't unless he turned off of Broad and floored it to get to me that quick because there was no one there as I panned the area. That's what kind of [leads] me to believe that.
> **Q.** So when you told me earlier that you stopped and looked, tell me specifically which direction you looked or if you looked in both directions?
> **A.** Left [because] I'm turning right.
> **Q.** Did you also look right?
> **A.** As I'm into the turn, I looked left. I looked across the street at the parking lot, you know, to make sure no car is coming out and proceeded to turn right and that's when it happened.
> **Q.** Okay. . . . Sitting here today, you first saw him when the impact occurred?
> **A.** That is correct.
> **Q.** You did not see him pull out of the Market Basket parking lot, true?
> **A.** True.
> **Q.** Okay. You didn't see him at any point on 3rd Avenue until the impact occurred?
> **A.** That is correct.
> **Q.** Okay.
> **A.** Which led me to believe he had to come out of the parking lot of Market Basket. I feel that.

Doc. 33, att. 1, pp. 13, 22–23.

Mr. Franklin maintains that this testimony amounts to speculation, because Mr. Ewing failed to actually observe Mr. Franklin cutting through the Market Basket parking lot. But a court is permitted to draw reasonable inferences in favor of the nonmovant on

summary judgment. *Cory v. Stewart*, 103 F.4th 1067, 1078 (5th Cir. 2024). Mr. Ewing testified that he looked across the street at the parking lot and then looked left before turning right onto Third Avenue, but did not see Mr. Franklin's vehicle. He further testified that "a lot of people" cut through the nearby Market Basket parking lot to avoid the light, permitting a reasonable inference that Mr. Franklin might have been quickly cutting through the parking lot into the intersection rather than traveling down Third Avenue with the right of way. Because the court cannot make any credibility determinations at this stage, the government has succeeded in creating a genuine issue of material fact. Accordingly, the government's liability must be decided at trial.

## IV.
## CONCLUSION

For the reasons stated above, the Motion for Partial Summary Judgment [doc. 25] will be **DENIED**.

**THUS DONE AND SIGNED** in Chambers on the 19th day of February, 2025.

_____
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**